No. 25-60071

---

In the

# United States Court of Appeals
## for the Fifth Circuit

---

AIRLINES FOR AMERICA, AMERICAN AIRLINES, INC., DELTA AIR LINES, INC.,
JETBLUE AIRWAYS CORPORATION, SOUTHWEST AIRLINES CO.,
AND UNITED AIRLINES, INC.,

*Petitioners,*

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Respondent,*

PARALYZED VETERANS OF AMERICA,

*Intervenor.*

---

On Petition for Review of a Final Rule of the
United States Department of Transportation
Agency No. DOT-OST-2022-0144

---

## PETITIONERS' OPENING BRIEF

---

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Hanaa Khan
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Jeremy Patashnik
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

*Counsel for Petitioners*

# CERTIFICATE OF INTERESTED PERSONS

**No. 24-60071**, *Airlines for America, et al. v. United States Department of Transportation*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are so the judges of this Court may evaluate possible disqualification or recusal.

## I.     Petitioners

Petitioner Airlines for America has no parent corporation, and no corporation holds a 10% or greater ownership interest in it.

Petitioner American Airlines, Inc., is a wholly owned subsidiary of American Airlines Group Inc., a publicly held corporation. No other publicly held corporation holds 10% or more of its stock.

Petitioner Delta Air Lines, Inc., is a publicly held corporation. It has no parent corporation, and The Vanguard Group owns 10% or more of its stock. No other publicly held corporation holds 10% or more of Delta Air Lines, Inc.'s stock.

Petitioner JetBlue Airways Corporation is a publicly held corporation. It has no parent corporation, and Blackrock, Inc., holds 10% or more of

JetBlue Airways Corporation stock. No other publicly held corporation holds 10% or more of JetBlue Airways Corporation's stock.

Petitioner Southwest Airlines Co. is a publicly traded entity and is traded on the NYSE (LUV). The Vanguard Group has filed a Form 13G with the Securities and Exchange Commission (SEC) stating that it beneficially owns more than 10% of the shares of Southwest Airlines Co. Elliott Investment Management L.P. has filed a Schedule 13D with the SEC reporting beneficial ownership of 9.1% of outstanding shares of common stock of Southwest Airlines Co. and economic exposure to Southwest Airlines Co. of approximately 13.4% of common stock outstanding of Southwest Airlines Co. Southwest Airlines Co. has no parent corporation, no other entity has reported beneficial holdings of over 10%, and there is no other entity related to, or affiliated with, Southwest Airlines Co. that has a pecuniary interest in the outcome of the case.

Petitioner United Airlines, Inc., is a wholly owned subsidiary of United Airlines Holdings Inc. No other publicly held corporation holds 10% or more of United Airlines, Inc.'s stock.

## II.    Respondent

The United States Department of Transportation is an agency of the federal government.

## III.    Intervenor

Paralyzed Veterans for America is a non-profit, congressionally chartered veterans services organization.

## IV.    Interested parties

### A.    Counsel for Petitioners

Counsel for Petitioners in the litigation are Shay Dvoretzky, Parker Rider-Longmaid, Jeremy Patashnik, and Hanaa Khan, of Skadden, Arps, Slate, Meagher & Flom LLP.

### B.    Counsel for Respondent

Counsel for Respondent U.S. Department of Transportation are:

- Michael Shih, Michael S. Raab, and Urja Mittal, U.S. Department of Justice

- Judith S. Kaleta, Deputy General Counsel, and Charles E. Enloe, Assistant General Counsel for Litigation and Enforcement, U.S. Department of Transportation

### C.    Counsel for Intervenor

Counsel for Intervenor Paralyzed Veterans of America are:

- Alessandra Baniel Markano-Stark and Stephen Hayes of Relman Colfax, P.L.L.C.

- Robin F. Thurston of Democracy Forward Foundation

**D.     Other interested parties**

To counsel's knowledge, there are no additional firms or persons with

an interest in the outcome of the litigation.


Dated: June 11, 2025                    */s/ Shay Dvoretzky*
                                        Shay Dvoretzky

                                        *Counsel for Petitioners*

## REQUEST FOR ORAL ARGUMENT

In accordance with Federal Rule of Appellate Procedure 34(a)(1) and Circuit Rule 28.2.3, Petitioners respectfully request oral argument. This case involves an important question regarding whether the U.S. Department of Transportation can impose strict liability on airlines under the Air Carrier Access Act of 1986. Petitioners submit that oral argument would help the Court resolve this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

REQUEST FOR ORAL ARGUMENT .................................................................. v

TABLE OF AUTHORITIES ............................................................................... ix

GLOSSARY ................................................................................................. xvii

INTRODUCTION .............................................................................................. 1

JURISDICTIONAL STATEMENT ....................................................................... 5

STATEMENT OF THE ISSUES .......................................................................... 5

STATUTES AND REGULATIONS ...................................................................... 6

STATEMENT OF THE CASE .............................................................................. 6

    A.    Legal background ........................................................................ 6

    B.    Procedural background ................................................................ 9

SUMMARY OF ARGUMENT ........................................................................... 16

STANDARD OF REVIEW ................................................................................ 22

ARGUMENT ................................................................................................... 23

    A.    The Strict-Liability Provision exceeds DOT's statutory authority by making air carriers liable even when they have not discriminated against individuals with disabilities. ............................................................................... 23

        1.    Text, structure, and legislative history make clear that the ACAA prohibits air carriers from discriminating on the basis of disability and thus requires some conduct by an air carrier. ........................... 24

# TABLE OF CONTENTS
## (continued)

**Page**

2.  The meaning of discrimination in other statutes confirms that discrimination requires wrongful conduct by the relevant actor—under the ACAA, by airlines......................................................................27

3.  The Strict-Liability Provision exceeds DOT's authority under the ACAA because it purports to make air carriers liable when they have not discriminated against individuals with disabilities..........33

4.  The Strict-Liability Provision is not authorized by 49 U.S.C. § 41702, the 2018 FAA Act, or the 2024 FAA Act............................................................................36

5.  DOT's policy rationale does not give it authority for the Strict-Liability Provision....................................42

B.  The Strict-Liability Provision is arbitrary and capricious because DOT failed to rationally justify or explain the authority supporting it. ..................................................43

1.  Agency action is arbitrary and capricious if it is not an exercise of reasoned decisionmaking. ..........................44

2.  DOT failed to explain how it had authority under the ACAA (or any other provision) to promulgate the Strict-Liability Provision, and its reasoning for imposing strict liability is not rational. ...............................46

C.  The proper remedy is to vacate the Strict-Liability Provision and sever it. ....................................................51

CONCLUSION ....................................................................................55

CERTIFICATE OF COMPLIANCE ....................................................56

## TABLE OF CONTENTS
(continued)

**Page**

CERTIFICATE OF SERVICE ..................................................................57

INDEX OF ADDENDUM ....................................................................59

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Apter v. Department of Health & Human Services,*
    80 F.4th 579 (5th Cir. 2023) ........................................................ 42, 43

*Austin v. City of Pasadena,*
    74 F.4th 312 (5th Cir. 2023) ........................................................ 32, 33

*Barnes v. Gorman,*
    536 U.S. 181 (2002) ........................................................................ 32

*Carlson v. Postal Regulatory Commission,*
    938 F.3d 337 (D.C. Cir. 2019) ...................................................... 52

*Chamber of Commerce of the United States v. United States*
    *Securities & Exchange Commission,*
    85 F.4th 760 (5th Cir. 2023) ........................................................ 45, 47

*Corley v. United States,*
    556 U.S. 303 (2009) ...................................................................... 39, 40

*Department of Homeland Security v. Regents of*
    *the University of California,*
    591 U.S. 1 (2020) .......................................................................... 37, 38

*Fahim v. Marriott Hotel Services, Inc.,*
    551 F.3d 344 (5th Cir. 2008) ........................................................ 28

*Federal Communications Commission v.*
    *Prometheus Radio Project,*
    592 U.S. 414 (2021) ...................................................................... 44

*Flight Training International, Inc. v.*
    *Federal Aviation Administration,*
    58 F.4th 234 (5th Cir. 2023) .......................................................... 5

*Food & Drug Administration v.*
    *Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ...................................................................... 40

*Garland v. Cargill,*
    602 U.S. 406 (2024) ...................................................................... 22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Gilstrap v. United Air Lines, Inc.*,
709 F.3d 995 (9th Cir. 2013) ...................................................................8

*Griffin v. United Parcel Service, Inc.*,
661 F.3d 216 (5th Cir. 2011) ................................................... 31, 35

*Hale v. King*,
642 F.3d 492 (5th Cir. 2011) ................................................... 31, 32

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) .............................................................................24

*Lilliputian Systems, Inc. v. Pipeline & Hazardous
Materials Safety Administration*,
741 F.3d 1309 (D.C. Cir. 2014) ..........................................................45

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ................................................................ 2, 22, 36

*Loulseged v. Akzo Nobel Inc.*,
178 F.3d 731 (5th Cir. 1999) ...............................................................31

*Love v. Delta Air Lines*,
310 F.3d 1347 (11th Cir. 2002) ..........................................................27

*Mayfield v. United States Department of Labor*,
117 F.4th 611 (5th Cir. 2024) ................................................. 22, 35, 36

*McNeil v. Time Insurance Co.*,
205 F.3d 179 (5th Cir. 2000) ........................................... 30, 35, 36, 39

*Michigan v. Environmental Protection Agency*,
576 U.S. 743 (2015) ................................................................ 44, 51

*Motor Vehicle Manufacturers Ass'n of the United States v.
State Farm Mutual Auto Insurance Co.*,
463 U.S. 29 (1983) ................................................................ 44, 48

*Mozilla Corp. v. Federal Communications Commission*,
940 F.3d 1 (D.C. Cir. 2019) ................................................... 45, 46, 49

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Nasdaq Stock Market LLC v.*
*Securities & Exchange Commission,*
38 F.4th 1126 (D.C. Cir. 2022) ..............................................................52

*National Ass'n of Manufacturers v. United States*
*Securities & Exchange Commission,*
105 F.4th 802 (5th Cir. 2024)................................................... 52, 53

*Ohio v. Environmental Protection Agency,*
603 U.S. 279 (2024)...............................................................................44

*Olmstead v. L.C. ex rel. Zimring,*
527 U.S. 581 (1999)...............................................................................32

*Parker Drilling Management Services, Ltd. v. Newton,*
587 U.S. 601 (2019)...............................................................................27

*PGA Tour, Inc. v. Martin,*
532 U.S. 661 (2001)...............................................................................29

*Pickett v. Texas Tech University Health Sciences Center,*
37 F.4th 1013 (5th Cir. 2022)...................................................... 31, 32

*Prim v. Stein,*
6 F.4th 584 (5th Cir. 2021)..................................................................30

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
566 U.S. 639 (2012)...............................................................................39

*Rodriguez v. United States,*
480 U.S. 522 (1987) (per curiam)............................................... 42, 43

*Sackett v. Environmental Protection Agency,*
598 U.S. 651 (2023)...............................................................................40

*Sierra Club v. United States Environmental Protection Agency,*
939 F.3d 649 (5th Cir. 2019) ...............................................................44

*Stokes v. Southwest Airlines,*
887 F.3d 199 (5th Cir. 2018)....................................................... 26, 27

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tennessee v. Lane,*
541 U.S. 509 (2004)................................................................31

*University of Texas Southwestern Medical Center v. Nassar,*
570 U.S. 338 (2013)................................................................28

*Van Loon v. Department of the Treasury,*
122 F.4th 549 (5th Cir. 2024)................................................25

*West Virginia v. Environmental Protection Agency,*
597 U.S. 697 (2022)................................................................33

*Xcel Energy Services Inc. v. Federal Energy Regulatory Commission,*
815 F.3d 947 (D.C. Cir. 2016)..........................................44, 45

*Ysleta del Sur Pueblo v. Texas,*
596 U.S. 685 (2022)..........................................................39, 40

**CONSTITUTION AND STATUTES**

U.S. Const. amend. XIV ....................................................31, 32

Administrative Procedure Act,
5 U.S.C. § 551 *et seq*...............................................2, 3, 22, 43,
.......................................................44, 45, 51, 52, 53

5 U.S.C. § 553(b)(2) ........................................................37, 38

5 U.S.C. § 706(2) ............................................................22, 36

Rehabilitation Act of 1973,
29 U.S.C. § 701 *et seq*.............................................2, 16, 27, 32, 33

29 U.S.C. § 794...................................................................32

29 U.S.C. § 794(a)..............................................................32

29 U.S.C. § 794a(a)(2) .........................................................32

Civil Rights Act of 1964,
42 U.S.C. § 2000a *et seq*.........................................2, 16, 27, 28

Title II, 42 U.S.C. § 2000a *et seq*...........................................28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

42 U.S.C. § 2000a......................................................................28

Title VII, 42 U.S.C. § 2000e *et seq.* ....................................28

Americans with Disabilities Act of 1990,
42 U.S.C. § 12101 *et seq.*................................... 2, 16, 23, 27,
........................................................................ 28, 29, 31, 32, 33

Title I, 42 U.S.C. § 12111 *et seq.* ........................................31

Title II, 42 U.S.C. § 12131 *et seq.*........................... 31, 32, 33

42 U.S.C. § 12132.......................................................... 31, 32

42 U.S.C. § 12133...................................................................32

Title III, 42 U.S.C. § 12181 *et seq.*.............................. 29, 30

42 U.S.C. § 12182(b)(2)(A) .................................................29

Communications Act of 1934,
47 U.S.C. § 151 *et seq.*............................................... 45, 46

49 U.S.C. § 40113...................................................................12

49 U.S.C. § 41702................................................ 7, 9, 13, 17, 18,
............................................................... 36, 37, 38, 39, 40, 59

Air Carrier Access Act of 1986, Pub. L. No. 99-435,
100 Stat. 1080 (codified as amended at
49 U.S.C. § 41705) (ACAA) ........................... 1, 2, 3, 5, 6,
.............................................................. 7, 8, 9, 10, 11, 12,
.......................................................... 13, 15, 16, 17, 18, 19, 20,
........................................................ 21, 23, 24, 25, 26, 27, 28, 29, 32,
........................................................ 33, 34, 35, 36, 37, 38, 39, 40, 41,
........................................................ 42, 43, 46, 47, 48, 49, 50, 51, 53, 54

ACAA § 3, 100 Stat. at 1080 .........................................7, 8

49 U.S.C. § 41705(a) ....................................... 1, 6, 16, 24, 25

49 U.S.C. § 41705(b).................................. 6, 16, 23, 24, 25, 35

49 U.S.C. § 41705 note.......................................... 18, 19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

49 U.S.C. § 41728(c) ................................................................41

49 U.S.C. § 46110 ....................................................................5

    49 U.S.C. § 46110(a) ............................................................5

    49 U.S.C. § 46110(c) ............................................................5

49 U.S.C. § 46301 ...............................................................9, 25

    49 U.S.C. § 46301(a)(1) .......................................................9

    49 U.S.C. § 46301(a)(1)(A) ..................................................9

    49 U.S.C. § 46301(a)(1)(B) ..................................................9

    49 U.S.C. § 46301(a)(7) .......................................................9

    49 U.S.C. § 46301(a)(7)(B) ................................................25

Federal Aviation Act of 1958,
Pub. L. No. 85-726, § 404, 72 Stat. 731, 760 .....................7

    Pub. L. No. 85-726 § 404(a), 72 Stat. at 760 ..................6, 7

Pub. L. No. 103-272, § 1(e),
108 Stat. 745, 1141 (1994) ...................................................7

Pub. L. No. 106-181, § 707(a),
114 Stat. 61, 158 (2000) .......................................................7

Pub. L. No. 108-176, § 503(d)(1),
117 Stat. 2490, 2559 (2003) .................................................7

FAA Reauthorization Act of 2018,
Pub. L. No. 115-254, 132 Stat. 3186 (2018 FAA Act) ........ 8, 17, 18,
.......................................................................... 19, 36, 40, 41

    2018 FAA Act § 434, 132 Stat. at 3343 .........................8, 41

    2018 FAA Act § 434(c), 132 Stat. at 3343 .........................41

    2018 FAA Act § 440, 132 Stat. at 3347 ........................ 13, 40

    2018 FAA Act § 440(a)(1), 132 Stat. at 3347 .......... 8, 18, 19, 40, 41

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

FAA Reauthorization Act of 2024, Pub. L. No. 118-63,
138 Stat. 1025 (2024 FAA Act) ............................................................ 8, 17, 18,
.......................................................................................... 19, 36, 40, 41, 42

2024 FAA Act § 542, 138 Stat. at 1201-02 ..................................... 8, 13, 19, 42

2024 FAA Act § 543, 138 Stat. at 1202-03 ..................................... 8, 13, 19, 42

2024 FAA Act § 544, 138 Stat. at 1203............................................. 13, 19, 42

2024 FAA Act § 544(a)(1), 138 Stat. at 1203 ....................................................8

2024 FAA Act § 549, 138 Stat. at 1212..............................................................7

2024 FAA Act § 550(c), 138 Stat. at 1212 .........................................................7

**REGULATIONS, RULES, AND NOTICES OF PROPOSED RULEMAKING**

14 C.F.R. Part 382....................................................................................................8

14 C.F.R. § 382.3.................................................................... 10, 14, 34, 35

14 C.F.R. § 382.11(b) ....................................................................... 53, 54

14 C.F.R. § 382.130 ...................................................................................53

14 C.F.R. § 382.130(a) ....................................................... 1, 18, 20, 21, 24, 33,
.............................................................................. 34, 37, 49, 51, 53, 50, 55

14 C.F.R. § 382.130(a)(1) ....................................................... 13, 14, 49, 50, 51

14 C.F.R. § 382.130(a)(2) ............................................................. 4, 14, 15, 21,
.............................................................................. 34, 48, 49, 50, 51

*Ensuring Safe Accommodations for Air Travelers
with Disabilities Using Wheelchairs,*
89 Fed. Reg. 17,766 (Mar. 12, 2024) ............................................ 9, 10, 11, 13,
.............................................................................. 20, 47, 53, 54

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Ensuring Safe Accommodations for Air Travelers*
  *with Disabilities Using Wheelchairs*,
  89 Fed. Reg. 102,398 (Dec. 17, 2024)................................................... 1, 2, 4, 5,
  ........................................................................................ 12, 13, 14, 15, 16,
  ........................................................................................ 18, 19, 20, 21, 22, 24,
  ........................................................................................ 33, 34, 35, 36, 37, 38, 40, 41,
  ........................................................................................ 42, 47, 48, 49, 50, 51, 53, 54, 55

*Ensuring Safe Accommodations for Air Travelers*
  *with Disabilities Using Wheelchairs*,
  90 Fed. Reg. 9953 (Feb. 20, 2025) ....................................................................15

*Ensuring Safe Accommodations for Air Travelers*
  *with Disabilities Using Wheelchairs*,
  90 Fed. Reg. 24,319 (June 10, 2025) ......................................................... 15, 16

OTHER AUTHORITIES

Airlines for America, Comment Letter on Proposed Rule
  *Ensuring Safe Accommodations for Air Travelers with*
  *Disabilities Using Wheelchairs* (June 12, 2024),
  DOT-OST-2022-0144-1950................................................................. 10, 11, 12,
  ........................................................................................ 20, 47, 48, 53, 54

Airlines for America, *Our Commitment to Passenger Accessibility*
  (Oct. 2022), https://www.airlines.org/wp-content/up-
  loads/2022/10/Our-Commitment-to-Passenger-
  Accessibility_Final.pdf .........................................................................................4

*Discrimination*, Black's Law Dictionary (8th ed. 2004) ............................... 25, 26

*Discriminate*, Oxford English Dictionary,
  https://www.oed.com/dictionary/discriminate
  _v?tab=meaning_and_use#6527267 ................................................................25

S. Rep. No. 99-400 (1986) ....................................................... 6, 7, 26, 39

# GLOSSARY

| | |
|---|---|
| 2018 FAA Act | FAA Reauthorization Act of 2018, Pub. L. No. 115-254 |
| 2024 FAA Act | FAA Reauthorization Act of 2024, Pub. L. No. 118-63 |
| ACAA | Air Carrier Access Act of 1986 (codified as amended at 49 U.S.C. § 41705) |
| ADA | Americans with Disabilities Act of 1990 |
| APA | Administrative Procedure Act |
| Airlines | Petitioners Airlines for America; American Airlines, Inc.; Delta Airlines, Inc.; JetBlue Airways Corp.; Southwest Airlines Co.; and United Airlines, Inc. |
| DOT | Respondent United States Department of Transportation |
| NPRM | DOT's notice of proposed rulemaking: *Ensuring Safe Accommodations for Air Travelers with Disabilities Using Wheelchairs*, 89 Fed. Reg. 17,766 (Mar. 12, 2024) |
| PVA | Intervenor Paralyzed Veterans of America |
| Rule | DOT's final rule: *Ensuring Safe Accommodations for Air Travelers with Disabilities Using Wheelchairs*, 89 Fed. Reg. 102,398 (Dec. 17, 2024) (codified at 14 C.F.R. pt. 382) |
| Strict-Liability Provision | The Rule's provision imposing liability on an airline for damage that the airline did not cause to checked wheelchairs, scooters, other mobility aids, or other assistive devices, as codified in 14 C.F.R.§ 382.130(a) |

## INTRODUCTION

Petitioners (the Airlines) bring a targeted challenge to a provision of a U.S. Department of Transportation (DOT) rule that imposes strict liability on air carriers for damage to passengers' checked wheelchairs, scooters, or other assistive devices, even when the carriers' conduct did not cause the damage. *See Ensuring Safe Accommodations for Air Travelers with Disabilities Using Wheelchairs*, 89 Fed. Reg. 102,398 (Dec. 17, 2024) (the Rule). That Strict-Liability Provision, codified in 14 C.F.R. § 382.130(a), purports to make airlines strictly liable for significant civil penalties, in some circumstances for almost a quarter of a million dollars, whenever a wheelchair or other assistive device is damaged while it is in an airline's custody. The provision applies even if the damage was caused by a third party with no relationship to the airline, and even if the passenger checked a small assistive device in his luggage and the airline never knew it existed. This action narrowly challenges that Strict-Liability Provision.

As authority for the Strict-Liability Provision, DOT invokes the Air Carrier Access Act of 1986, Pub. L. No. 99-435, 100 Stat. 1080 (ACAA). Congress gave a simple command in the ACAA: "an air carrier" "may not discriminate" on the basis of disability. 49 U.S.C. § 41705(a). As the statute's

text makes clear, and like other antidiscrimination statutes Congress has enacted, the ACAA is intended to stop discriminatory conduct. But DOT interprets the ACAA to allow it to enact a strict-liability regime untethered from any discriminatory acts by air carriers.

That interpretation of the ACAA is wrong, and the Court cannot defer to DOT's contrary view. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-13 (2024). Because the Strict-Liability Provision is not authorized by the ACAA or any other statute—and because it is arbitrary and capricious, too, in violation of the Administrative Procedure Act (APA)—the Court should grant the petition for review and vacate that portion of the Rule.

**1.** The Strict-Liability Provision exceeds DOT's authority under the ACAA. That statute authorizes DOT to promulgate regulations implementing a mandate to eliminate disability discrimination in air travel. But discrimination requires some conduct, as confirmed by the ordinary meaning of the term and the statutory definitions and extensive caselaw analyzing other antidiscrimination statutes, including the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990 (ADA), and the Rehabilitation Act of 1973.

The Strict-Liability Provision exceeds DOT's authority because it makes airlines liable under the ACAA—in some instances for over $200,000 in civil penalties per violation—even if an airline has not discriminated against anyone. For example, under the Strict-Liability Provision, an airline violates the ACAA if extreme turbulence damages a properly loaded and secured wheelchair or if a Transportation Security Administration (TSA) agent damages an assistive device that the airline never knew about in a passenger's checked suitcase. But that is not discrimination by the airline.

**2.**    The Strict-Liability Provision also violates the APA because it is arbitrary and capricious. The APA requires agencies to exercise reasoned decisionmaking. Thus, agencies must rationally explain their actions—including the source of their authority to act in the first place—and respond to significant public comments.

The Strict-Liability Provision fails to meet those standards. The Airlines explained in their comments on DOT's proposed rule that the ACAA did not give DOT authority to promulgate the Strict-Liability Provision. But DOT didn't respond to, or even acknowledge, that significant comment about the Strict-Liability Provision's premise or otherwise explain how the ACAA (or any other statute) authorized the provision. The Strict-Liability

Provision is also illogical. DOT agreed that "it would be unreasonable to impose … strict liability" on airlines, 89 Fed. Reg. at 102,410, but nonetheless imposed strict liability for damage to wheelchairs and other assistive device due to "circumstances beyond the control of the airline," 14 C.F.R. § 382.130(a)(2). The provision is thus "unreasonable" on DOT's own terms.

**3.** This challenge is narrow and targeted. The Airlines share DOT's and the disability community's interests in making air travel safe and accessible for passengers with disabilities. The Airlines are committed to improving accessibility and accommodation services for passengers with disabilities. *See* Airlines for America, *Our Commitment to Passenger Accessibility* (Oct. 2022), https://www.airlines.org/wp-content/uploads/2022/10/Our-Commitment-to-Passenger-Accessibility_Final.pdf. This challenge simply seeks to ensure that DOT acts within the scope of its authority to regulate only acts within airlines' control and responsibility. Because the Strict-Liability Provision exceeds DOT's authority and is arbitrary and capricious, the Court should grant the petition for review and vacate that provision. And because the Rule can function sensibly without that unlawful provision, the Court should sever it and leave the remainder of the Rule in place.

## JURISDICTIONAL STATEMENT

**1.** On December 17, 2024, DOT issued the Rule, invoking its authority under the ACAA. *See* 89 Fed. Reg. at 102,398.

**2.** The Court has jurisdiction to review the Rule under 49 U.S.C. § 46110 because the Rule is an "order" that the Court "has exclusive jurisdiction to affirm, amend, modify, or set aside [in] any part." *Id.* § 46110(c); *see Flight Training International, Inc. v. Federal Aviation Administration*, 58 F.4th 234, 240 & n.4 (5th Cir. 2023). The Airlines timely filed their petition for review on February 14, 2025, *see* Doc. 1-2, at 3—within 60 days from DOT's issuance of the Rule on December 17, 2024. *See* 49 U.S.C. § 46110(a). Venue is proper because Petitioners American Airlines, Inc., and Southwest Airlines Co. have their principal places of business within this Circuit in Fort Worth, Texas, and Dallas, Texas. *See id.*

## STATEMENT OF THE ISSUES

**1.** Whether the Strict-Liability Provision exceeds DOT's statutory authority because it imposes strict liability on air carriers for non-conduct or for conduct that is not discrimination under the ACAA.

**2.**    Whether the Strict-Liability Provision is arbitrary and capricious because DOT failed to engage in reasoned decisionmaking in promulgating the provision.

**3.**    Whether the Strict-Liability Provision should be vacated because it exceeds DOT's authority and is arbitrary and capricious.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are set forth in the addendum bound with this brief.

## STATEMENT OF THE CASE

### A.    Legal background

**1.    a.**    Enacted in 1986, the ACAA directs that an "air carrier" "may not discriminate against an otherwise qualified individual" based on that individual's having "a physical or mental impairment that substantially limits one or more major life activities." 49 U.S.C. § 41705(a). The statute specifies that "a separate violation occurs" "for each individual act of discrimination prohibited by subsection (a)." *Id.* § 41705(b). The ACAA does not define "discriminate" or "discrimination."

Congress enacted the ACAA because the existing statutory scheme — and in particular "section 404(a) of the Federal Aviation Act of 1958" — did

- 6 -

not provide "sufficient statutory authority to support detailed, specific anti-discrimination rules." S. Rep. No. 99-400, at 2 (1986). Section 404, as currently codified, states that, "[a]n air carrier shall provide safe and adequate interstate air transportation." 49 U.S.C. § 41702; *see* Federal Aviation Act of 1958, Pub. L. No. 85-726, § 404(a), 72 Stat. 731, 760 (requiring "every air carrier" "to provide safe and adequate service" in "interstate and overseas air transportation"). Thus, the ACAA's "purpose" was to fill that statutory gap and "to prohibit specifically air carriers from discriminating against handicapped individuals in the provision of air transportation." S. Rep. No. 99-400, at 1.

Congress has amended the ACAA, without altering its substantive prohibition on disability discrimination, several times over the past few decades. *See* Pub. L. No. 103-272, § 1(e), 108 Stat. 745, 1141 (1994); Pub. L. No. 106-181, § 707(a), 114 Stat. 61, 158 (2000); Pub. L. No. 108-176, § 503(d)(1), 117 Stat. 2490, 2559 (2003); FAA Reauthorization Act of 2024, Pub. L. No. 118-63, §§ 549, 550(c), 138 Stat. 1025, 1212 (2024 FAA Act).

**b.**  The ACAA directed DOT to promulgate, "[w]ithin one hundred and twenty days" of the law's enactment, "regulations to ensure non-discriminatory treatment of qualified handicapped individuals consistent with

safe carriage of all passengers." Pub. L. No. 99-435, § 3, 100 Stat. at 1080. DOT has "issued regulations, codified at 14 C.F.R. Part 382, specifying the detailed requirements that airlines must meet to comply with the ACAA." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1000 (9th Cir. 2013).

Various provisions of the FAA Reauthorization Act of 2018, Pub. L. No. 115-254, 132 Stat. 3186 (2018 FAA Act), and the 2024 FAA Act, also authorize DOT to engage in rulemaking regarding individuals with disabilities in air travel. In the 2018 FAA Act, Congress directed DOT to "review, and if necessary revise, applicable regulations to ensure that passengers with disabilities who request assistance" receive "dignified, timely, and effective assistance at airports and on aircraft from trained personnel." 2018 FAA Act § 440(a)(1), 132 Stat. at 3347. The law also directed DOT to "develop" the "Airline Passengers with Disabilities Bill of Rights." *Id.* § 434, 132 Stat. at 3343. And in the 2024 FAA Act, Congress authorized DOT to "develop minimum training standards for airline personnel or contractors" who assist individuals with disabilities or handle wheelchairs, 2024 FAA Act §§ 542-543, 138 Stat. at 1201-03, and to direct "carriers to publish … information" relating to "aircraft cargo hold dimensions," *id.* § 544(a)(1), 138 Stat. at 1203.

**2.**     Another statute authorizes DOT to impose civil penalties for violations of various provisions of Title 49 of the U.S. Code, including §§ 41702 and 41705. *See* 49 U.S.C. § 46301(a)(1)(A), (B). Generally, the government cannot seek more than $75,000 under § 46301 for each violation. *Id.* § 46301(a)(1). But the government can seek up to three times that amount (so, $225,000) for "each act of discrimination prohibited by [§ 41705]" that "involves damage to a passenger's wheelchair or other mobility aid or injury to a passenger with a disability." *Id.* § 46301(a)(7).

**B.     Procedural background**

**1.**     In March 2024, DOT issued a notice of proposed rulemaking titled *Ensuring Safe Accommodations for Air Travelers with Disabilities Using Wheelchairs*, 89 Fed. Reg. 17,766 (Mar. 12, 2024) (NPRM).

**a.**     The NPRM proposed a wide range of measures that, according to DOT, would "strengthen its rule implementing the [ACAA]." *Id.* at 17,766. The NPRM proposed, among other things, "[c]larif[ying] that safe and dignified assistance to individuals with disabilities is required when [airlines] provid[e] required accommodations"; requiring "prompt enplaning, deplaning, and connecting assistance" for certain passengers with disabilities; "requir[ing] airlines to transport a delayed wheelchair or scooter to the

passenger's final destination within 24 hours of the passenger's arrival"; and mandating "[e]nhanced [t]raining" for certain airline personnel and contractors. *Id.* at 17,767-68.

The NPRM also proposed making it a "per se violation" of the ACAA if "any checked wheelchair or other assistive device … is lost, delayed, damaged, or pilfered (*i.e.*, stolen) while under the custody and control of an airline … regardless of the circumstances surrounding the event." *Id.* at 17,774. An "assistive device," as defined in a pre-existing DOT regulation, is "any piece of equipment," including "medical devices and medications," "that assists a passenger with a disability to cope with the effects of his or her disability." 14 C.F.R. § 382.3. DOT invited comments on whether it was "reasonable to consider any mishandling of a wheelchair or other assistive device a per se violation of the ACAA." 89 Fed. Reg. at 17,774.

**b.**    Petitioner Airlines for America submitted comments on the NPRM "[o]n behalf of [its] members," including all other Petitioners here. *See* Airlines for America, Comment Letter on Proposed Rule *Ensuring Safe Accommodations for Air Travelers with Disabilities Using Wheelchairs* 1 & n.1 (June 12, 2024), DOT-OST-2022-0144-1950 [hereinafter Airline Comments].

The Airlines made clear that they "generally support[ed] the purpose and intent of nearly all" of DOT's proposals. *Id.* at 2.

But the Airlines explained that the NPRM exceeded DOT's authority insofar as it would have made any mishandling of a wheelchair or other assistive device a per se violation of the ACAA. The Airlines reasoned that the ACAA does not give DOT the "authority to impose strict liability for all 'mishandling,'" especially "liability for circumstances that are beyond the airline's control or not the airline's fault." *Id.* at 40-41. That's because the ACAA "is limited: it prohibits a specific act by the airlines—the act of discrimination." *Id.* at 41. Thus, the Airlines concluded, the statute does not allow DOT "to impose strict liability on airlines without any connection to an act of discrimination by the airline." *Id.* The Airlines also explained that the "per se violation proposal" would "violate the airlines' constitutional Due Process rights to defend themselves against invalid claims of 'mishandling' that the airlines did not, in fact, cause." *Id.* at 44.

The Airlines thus suggested that DOT make liability for mishandling a "checked wheelchair or scooter … a rebuttable violation of the [ACAA]," rather than a per se violation, and to limit liability to "a direct act of the airline or its agents." *Id.* at 45. The Airlines pointed out that air carriers should

not be liable for mishandlings that are due to "circumstances that are beyond the control and at no fault of the airline." *Id.* at 35-36. The Airlines explained that it would be "patently unfair to impose strict regulatory liability" when, for example:

- an "[a]ct[] of God, including extreme turbulence," causes damage to a wheelchair, "despite the mobility aid being properly loaded and secured in the cargo compartment";

- damage results from an "aircraft accident[]" that is unrelated "to the mobility aid" and not the fault of the airline;

- a passenger "requests that their mobility aid be handled … in a manner that is contrary to the manufacturer's directions," and that mishandling damages the mobility aid;

- a "third party, beyond the control of the airline or their contractors," such as a TSA agent, "mishandles the mobility aid"; or

- an assistive device in a passenger's checked luggage—including a hearing aid, glasses, medication, or any of the "many thousands of potential" objects that meet the regulatory definition of "assistive device," *see supra* p. 10—is damaged, despite the passenger's failing to notify the airline of the device's existence or the damage otherwise occurring through no fault of the airline.

Airline Comments 35-39, 41-42.

**2.**    DOT issued the final Rule on December 17, 2024. *See* 89 Fed. Reg. at 102,398.

**a.**    DOT invoked the ACAA as its authority for the Rule, in conjunction with DOT's general grant of rulemaking authority in 49 U.S.C. § 40113.

*See* 89 Fed. Reg. at 102,398. DOT also invoked 49 U.S.C. § 41702, explaining that, "[t]o the extent that violations of the ACAA … occur in interstate air transportation, the incidents are also violations" of § 41702, "which requires air carriers to provide safe and adequate interstate air transportation." 89 Fed. Reg. at 102,398. And DOT invoked section 440 of the 2018 FAA Act and sections 542, 543, and 544 of the 2024 FAA Act as additional sources of authority. *Id.* at 102,398-99; *see supra* p. 8. DOT did not explain which statutes specifically authorized which of the Rule's provisions.

     **b.**    The Rule addressed only some of the Airlines' comments regarding the NPRM's proposal to impose strict liability on air carriers for mishandling of wheelchairs or other assistive devices.

DOT "f[ou]nd persuasive the comments from airline industry stakeholders that it would be unreasonable to impose on airlines a strict liability standard for wheelchairs or other assistive devices." 89 Fed. Reg. at 102,410. Thus, under the Rule, airlines are "provided an opportunity to defend themselves" and "should not be found liable for mishandling wheelchairs based on false allegations and in situations where the mobility aids were damaged … prior to the airline receiving them." *Id.*; *see* 14 C.F.R. § 382.130(a)(1). And, DOT explained in the Rule's preamble, "[n]egligence of the person

with a disability due to improper labeling, instructions, or other factors, could also be a defense" to liability, 89 Fed. Reg. at 102,410, even though DOT did not codify that defense in the regulation, *see* 14 C.F.R. § 382.130(a)(1).

But DOT did "not find persuasive the comments from the airline industry stakeholders stating that airlines should not be liable for damage to wheelchairs that are due to 'acts of God' or a third-party." 89 Fed. Reg. at 102,410; *see* 14 C.F.R. § 382.130(a)(2). DOT explained that, "[w]hile 'acts of God' or actions of a third-party are beyond the control of an airline," "imposing responsibility on the airline is proper when the mishandling occurs when the device is in the airline's custody and the mishandling is through no fault of the passenger." 89 Fed. Reg. at 102,410-11. And the Rule defines "custody" to mean the "time period" beginning "when the passenger hands the device to an airline's representative or agent" and ending "when the passenger, or someone acting on behalf of the passenger, … takes physical possession of the wheelchair, scooter, or other assistive device." 14 C.F.R. § 382.3.

DOT reasoned that "[t]he airline in the best position to monitor the handling of wheelchairs and other assistive devices and to adjust practices

and procedures to better protect wheelchairs and other assistive devices." 89 Fed. Reg. at 102,411. DOT concluded that "imposing responsibility on the carrier is an effective method to advance the goals of the ACAA … to reduce mishandlings." *Id.* Thus, the Strict-Liability Provision provides that the presumption of an ACAA violation "cannot be overcome" even if an airline demonstrates "that the mishandling of a checked wheelchair, scooter, other mobility aid, or other assistive device is the result of an 'act of God' or other circumstances beyond the control of the airline." 14 C.F.R. § 382.130(a)(2).

DOT did not address the Airlines' comment that the agency lacked authority under the ACAA to impose liability on air carriers for damage to wheelchairs or other assistive devices that are not caused by any discriminatory act of an airline or its agents.

**c.**    The Rule became effective on January 16, 2025, *id.*, but enforcement was stayed until March 20, 2025, *see Ensuring Safe Accommodations for Air Travelers with Disabilities Using Wheelchairs*, 90 Fed. Reg. 9953, 9953 (Feb. 20, 2025). DOT later announced that it would "continue to exercise its … discretion and not enforce" the Rule before August 1, 2025, "to allow additional time" for review, "to ensure that [the Rule] is consistent with the law" and to "consider the issues raised by" this lawsuit. *Ensuring Safe Accommodations*

*for Air Travelers with Disabilities Using Wheelchairs*, 90 Fed. Reg. 24,319, 24,320 (June 10, 2025).

**3.**    The Airlines timely petitioned the Court to review the Rule. Doc. 1; *supra* p. 5. The Court subsequently granted the Paralyzed Veterans of America's (PVA) unopposed motion to intervene. *See* Docs. 24, 39.

## SUMMARY OF ARGUMENT

**A.**    The Strict-Liability Provision exceeds DOT's authority under the ACAA because it makes air carriers liable even when they have not discriminated against individuals with disabilities.

**1.**    The ACAA prohibits air carriers from discriminating on the basis of disability. The statute's text makes clear that liability under the statute requires some "act of discrimination" by "an air carrier." 49 U.S.C. § 41705(a), (b). And discrimination necessarily entails some wrongful conduct.

**2.**    Other contemporary antidiscrimination statutes, including the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Rehabilitation Act support that conclusion. Those statutes prohibit discrimination across many contexts, but in every instance, discrimination requires a wrongful act or omission by the defendant.

**3.**    The Strict-Liability Provision exceeds DOT's authority under the ACAA because it purports to impose strict liability on airlines for conduct that is not discriminatory. The provision exposes an airline to significant civil penalties—in some instances, nearly a quarter of a million dollars—every time a checked wheelchair or other assistive device is damaged while in the airline's custody, even if an airline exercised the utmost care in handling the device and the damage was due to circumstances beyond the airline's control. Indeed, the Strict-Liability Provision makes airlines strictly liable when a properly loaded wheelchair is damaged due to extreme turbulence or an assistive devices contained in a passenger's checked suitcase (unbeknownst to the airline) is damaged. In those circumstances, an airline has not discriminated based on disability, and DOT exceeds its authority under the ACAA by imposing liability for conduct that is not discrimination.

**4.**    The Strict-Liability Provision is not alternatively authorized by 49 U.S.C. § 41702 or by the 2018 FAA Act or 2024 FAA Act.

**a.**    The provision is not authorized by 49 U.S.C. § 41702, which provides that "[a]n air carrier shall provide safe and adequate interstate air transportation."

The Rule expressly states that it is defining a "violation of the ACAA," 14 C.F.R. § 382.130(a), not some other statute. It would make no sense if the ACAA did not authorize DOT to define an ACAA violation as broadly as the Strict-Liability Provision purports to, but another statute did. Indeed, DOT has never independently justified the Strict-Liability Provision under § 41702. Rather, DOT said that "[t]o the extent that violations of the ACAA … occur in interstate air transportation, the incidents *are also* violations of 49 U.S.C. 41702." 89 Fed. Reg. at 102,398 (emphasis added). What's more, the Rule acknowledges that § 41702 applies only to "interstate air travel," so the Rule—which does not limit its reach to interstate travel—is overbroad even assuming § 41702 authorizes it.

In any event, § 41702 does not authorize the Strict-Liability Provision. Like the ACAA, § 41702 directs its command toward air carriers, and it does not purport to impose liability for events outside air carriers' control. Indeed, if § 41702 authorized DOT to impose sweeping liability even for damage to wheelchairs that airlines did not cause, it would render the more-specific ACAA superfluous.

**b.**    Nor does the 2018 FAA Act or 2024 FAA Act authorize the Strict-Liability Provision. The 2018 FAA Act directed DOT to "review, and if

necessary revise, applicable regulations" related to passengers with disabilities, but that statute did not alter the substantive standards under the ACAA. 2018 FAA Act § 440(a)(1), 132 Stat. at 3347 (codified at 49 U.S.C. § 41705 note). And the provisions from the 2024 FAA Act that DOT gestured to in the Rule are inapposite, covering topics like "minimum training standards for airline personnel," 2024 FAA Act §§ 542-543, 138 Stat. at 1201-03, or "aircraft cargo hold dimensions," *id.* § 544, 138 Stat. at 1203.

**5.** The Rule justifies imposing strict liability for damage to wheelchairs because, in DOT's view, airlines are "in the best position to monitor the handling of wheelchairs … and to adjust practices and procedures to better protect" them. 89 Fed. Reg. at 102,411. That reasoning fails because DOT's policy rationale for promulgating the Strict-Liability Provision has no bearing on its authority to do so under the ACAA or any other statute.

**B.** The Strict-Liability Provision is also arbitrary and capricious because DOT failed to rationally justify or explain its authority for promulgating the provision.

**1.** Agency action is arbitrary and capricious if the agency fails to engage in reasoned decisionmaking. Under that standard, agency action must be both reasonable and reasonably explained. Thus, an agency must

explain its statutory authority to act. An agency also must respond to significant public comments, and in particular, must respond to comments that challenge a fundamental premise underlying the agency's action. Agency action is also arbitrary and capricious if the agency's reasoning is internally inconsistent.

**2.** The Strict-Liability Provision is not the result of reasoned decisionmaking.

**a.** The Airlines explained in their comments that DOT exceeded its statutory authority under the ACAA "by proposing to impose strict liability on airlines without any connection to an act of discrimination by the airline." Airline Comments 41. Despite that argument, DOT failed to explain how the ACAA, or any other statute, gives it authority to enact the Strict-Liability Provision. DOT's failure to respond to that argument, in and of itself, makes the Strict-Liability Provision arbitrary and capricious.

**b.** The Strict-Liability Provision is also illogical on its own terms. DOT agreed that "it would be unreasonable to impose … strict liability" on airlines, as the NPRM proposed. 89 Fed. Reg. at 102,410. The Rule thus makes it a "rebuttable presumption" that an airline violated the ACAA "[w]henever a passenger's checked wheelchair" or other assistive device "is not

returned" "in the same condition it was received." 14 C.F.R. § 382.130(a). But the Rule nonetheless makes airlines strictly liable for damage to wheelchairs, because that presumption can be rebutted only by showing that the claim fails as a factual matter or that it is fraudulent, but not if the damage occurs because of "circumstances beyond the control of the airline." *Id.* § 382.130(a)(2). In other words, the Rule creates the strict-liability regime that DOT itself said would be "unreasonable." 89 Fed. Reg. at 102,410.

**C.**    The Court should vacate, set aside, and hold unenforceable the Strict-Liability Provision, codified in 14 C.F.R. § 382.130(a). It should also sever that unlawful provision, leaving the remainder of the Rule in place, because DOT likely would have adopted the unchallenged portion of the Rule even without the Strict-Liability Provision—as evidenced by the Rule's severability clause—and because the remainder of the Rule can function sensibly without the unlawful provision.

Setting aside the Strict-Liability Provision has implications for how DOT enforces the remainder of the Rule, too. DOT cannot impose liability on air carriers under the Rule for non-conduct or for conduct that is not "discrimination" under the ACAA.

## STANDARD OF REVIEW

The Court "shall" "set aside" the Rule if it is "arbitrary [and] capricious" or exceeds DOT's "authority." 5 U.S.C. § 706(2). "[T]he APA requires" the Court to "exercise [its] independent judgment in deciding whether [the] agency has acted within its statutory authority." *Loper Bright*, 603 U.S. at 412. Thus, the Court "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413.

An agency exceeds its statutory authority if it issues a rule that is inconsistent with the language of the statute under which the agency purports to act. *See Garland v. Cargill*, 602 U.S. 406, 415 (2024). Thus, the Court must "independently identify and respect [constitutional] delegations of authority" in the relevant statutes and "police the outer statutory boundaries of those delegations" to "ensure that agencies exercise their discretion consistent with the APA." *Loper Bright*, 603 U.S. at 404. Performing that judicial task "requires using 'all relevant interpretive tools' to determine the 'best' reading of a statute; a merely 'permissible' reading is not enough." *Mayfield v. United States Department of Labor*, 117 F.4th 611, 617 (5th Cir. 2024) (quoting *Loper Bright*, 603 U.S. at 400).

## ARGUMENT

### A.    The Strict-Liability Provision exceeds DOT's statutory authority by making air carriers liable even when they have not discriminated against individuals with disabilities.

The Strict Liability-Provision exceeds DOT's statutory authority and is thus unlawful because it imposes liability on airlines even when damage to a wheelchair or assistive device does not result from the airline's conduct, much less discriminatory conduct. The ACAA prohibits air carriers from discriminating on the basis of disability. The statute expressly requires an "act of discrimination" in order for an airline to be liable. 49 U.S.C. § 41705(b). The statute thus does not authorize DOT to impose liability for damage to wheelchairs or other devices when an airline has not engaged in discriminatory conduct. That is consistent with how Congress defines "discrimination"—and how courts interpret that term—in other antidiscrimination statutes, including the ADA. Because the Strict-Liability Provision purports to make airlines strictly liable for damage to wheelchairs, even when the airlines did not engage in discriminatory conduct—or any conduct—it exceeds DOT's statutory authority.

DOT's potential counterarguments fail. DOT may argue that it had authority to enact the Strict-Liability Provision under other statutes, even if it

lacked authority to do so under the ACAA. But the Strict-Liability Provision expressly states that it is defining a "violation of the ACAA." 14 C.F.R. § 382.130(a). If the ACAA itself does not authorize DOT to define an ACAA violation, then it would make no sense for *another* statute to define an ACAA violation. DOT also might also argue, as it did in the Rule, that the Strict-Liability Provision is justified for policy reasons. But that purposive reasoning cannot expand DOT's authority or change the meaning of the word "discrimination" under the ACAA.

> **1.    Text, structure, and legislative history make clear that the ACAA prohibits air carriers from discriminating on the basis of disability and thus requires some conduct by an air carrier.**

**a.**    "As in any case of statutory construction," a court's "analysis begins with 'the language of the statute.'" *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Statutory text makes clear that Congress sought to impose liability only for discriminatory conduct by air carriers. Congress directed the ACAA's command to airlines, providing that "an air carrier" "may not discriminate" on the basis of disability. 49 U.S.C. § 41705(a). The statute further makes clear that "each individual *act* of discrimination prohibited" by § 41705(a) constitutes "a separate violation" of the statute, *id.*

§ 41705(b) (emphasis added), confirming that ACAA liability presupposes a discriminatory act by an air carrier. What's more, 49 U.S.C. § 46301, which authorizes the government to seek civil penalties for violations of the ACAA, similarly provides that "a separate violation of section 41705 occurs for each *act of discrimination* prohibited by that section." 49 U.S.C. § 46301(a)(7)(B) (emphasis added).

The meanings of "discriminate" and "discrimination" likewise contemplate some wrongful conduct. Although the ACAA does not define "discriminate" or "discrimination," "[w]here a statute leaves terms undefined," a court will "accord those terms their 'ordinary, contemporary, common meaning.'" *Van Loon v. Department of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024). The ordinary meaning of "discriminate" and "discrimination" makes clear that the concepts require some wrongful conduct. For example, "discriminate" means, as relevant here, "to treat a person or group in an unjust or prejudicial manner." *Discriminate*, Oxford English Dictionary, https://www.oed.com/dictionary/discriminate_v?tab=meaning_and_use #6527267. "Discrimination" similarly refers to an "established practice that … denies privileges to a certain class because of race, age, sex, nationality, religion or handicap." *Discrimination*, Black's Law Dictionary (8th ed.

2004). In all cases, discrimination requires the relevant actor to have engaged in some unjust conduct—whether treating a person or group wrongfully or maintaining a discriminatory practice.

**b.**    The ACAA's legislative history underscores that Congress intended to regulate only air carriers' discriminatory conduct. The Senate report accompanying the ACAA explained that the law's "purpose" was "to prohibit specifically air carriers from discriminating against handicapped individuals in the provision of air transportation." S. Rep. No. 99-400, at 1. That report noted that, before the passage of the ACAA, travelers with disabilities were "subject to the possibility of discriminatory, inconsistent and unpredictable treatment on the part of air carriers." *Id.* at 2. For example, individuals with disabilities were "forced to comply with requirements" that were "unrelated to safety and [were] not imposed upon other travelers." *Id.* And "policies for accommodating" individuals with disabilities "var[ied] from airline to airline" as well as "within any one airline." *Id.* The ACAA was thus intended to outlaw that discriminatory conduct.

**c.**    Courts, in turn, have accordingly reached the straightforward conclusion that the ACAA targets discriminatory conduct by airlines. As this Court has put it, "[t]he ACAA prohibits *airlines* from discriminating on the

basis of disability." *Stokes v. Southwest Airlines*, 887 F.3d 199, 202 (5th Cir. 2018) (emphasis added). The Eleventh Circuit has similarly explained that "[t]he apparent congressional purpose in passing the ACAA" was to protect "disabled individuals against discrimination *by commercial air carriers*." *Love v. Delta Air Lines*, 310 F.3d 1347, 1358 (11th Cir. 2002) (emphasis added).

> **2.    The meaning of discrimination in other statutes confirms that discrimination requires wrongful conduct by the relevant actor—under the ACAA, by airlines.**

The way Congress has defined discrimination in other antidiscrimination statutes, including the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Rehabilitation Act, underscores that the term requires wrongful conduct by the target of the prohibition. The meaning of those other statutes matters because "Congress legislates against the backdrop of existing law." *Parker Drilling Management Services, Ltd. v. Newton*, 587 U.S. 601, 611 (2019). Congress would not have silently intended discrimination under the ACAA to require no wrongful conduct, when other antidiscrimination laws—which predate the ACAA or were enacted around the same time—do require such conduct.

a.    Start with the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, religion, sex, and national origin in a variety of

contexts. For example, Title II "prohibits discrimination in public accommodations." *Fahim v. Marriott Hotel Services, Inc.*, 551 F.3d 344, 349 (5th Cir. 2008); *see* 42 U.S.C. § 2000a. A Title II plaintiff must provide either "direct evidence of discrimination," meaning evidence that shows "discriminatory animus," or "circumstantial evidence" of discrimination, which includes a showing that a plaintiff was "denied those services" that "were made available to similarly situated persons outside her protected class." *Fahim*, 551 F.3d at 349-50. Thus, liability requires that a public accommodation either act with animus or deny a service to a protected class that is offered to others.

Similarly, Title VII of the Civil Rights Act "provides remedies to employees for injuries related to discriminatory conduct" of employers. *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 342 (2013). The Supreme Court has explained that, under that statute, "there must be some demonstrated connection" "between the injury sustained" and the "wrong alleged." *Id*. Thus, discrimination in that context necessarily requires "wrongful conduct." *Id.*

**b.**    The Americans with Disabilities Act, which was enacted within five years of the ACAA's original enactment and before Congress amended

the ACAA over the past three decades, *supra* p. 7, also makes clear that discrimination requires conduct.

*i.*    Title III of the ADA "prohibit[s] public accommodations from discriminating against individuals because of their disabilities." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681-82 (2001). Title III includes a rule of construction that sets out what "discrimination includes" under the statute. 42 U.S.C. § 12182(b)(2)(A). Each of the enumerated categories of discrimination entails some conduct on the part of the public accommodation. For example, the statute defines discrimination to include "the imposition or application of eligibility criteria that screen out … an individual with a disability"; "a failure to make reasonable modifications in policies, practices, or procedures"; "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals"; and "a failure to remove architectural barriers … where such removal is readily achievable." *Id.* In short, discrimination under Title III requires a discriminatory act or omission.

Thus, liability under Title III depends on the public accommodation's engaging in discriminatory conduct, including by failing to do something

reasonable as part of its course of conduct and within its control. For example, when a plaintiff brings "an architectural barrier claim," the plaintiff must show that "the removal of the barrier is readily achievable." *Prim v. Stein*, 6 F.4th 584, 595 (5th Cir. 2021). And when a plaintiff asserts that a public accommodation "failed to implement a policy modification," the plaintiff must "identify a policy, practice, or procedure" of the public accommodation "to modify" and that "the requested modification is reasonable." *Id.*

This Court has noted that "[t]he prohibition of the statute is directed against owners [and operators] of places of public accommodation." *McNeil v. Time Insurance Co.*, 205 F.3d 179, 186 (5th Cir. 2000). Put differently, Title III "does not … regulate the content of goods and services that are offered." *Id.* Rather, it regulates the owners and operators of public accommodations and "prohibits *them* from discriminating against the disabled." *Id.* (emphasis added). The Court has explained that reading the statute to require the "goods and services" of a public accommodation to meet some standard — no matter the lack of conduct or culpability of the owner or operator — would be "a flawed and unreasonable construction" that would "demand[] the impossible." *Id.* at 187.

***ii.*** Other provisions of the ADA similarly require wrongful conduct. Title I, for instance, makes it "unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). The "burden rests primarily upon the employee" to "identify the disability … and to suggest the reasonable accommodations." *Id.* An "employer violates the ADA" only when it is "unwilling[] to engage in a good faith interactive process" with an employee and thus "fail[s] to reasonably accommodate [the] employee." *Id.* But an employer "cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Id.*; *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). In short, an employer violates Title I only if it knows about an employee's disability and the employer is responsible for the failure to accommodate that disability.

Title II of the ADA, in turn, prevents public entities from "subject[ing] to discrimination" any "qualified individual with a disability" "by reason of such disability." 42 U.S.C. § 12132. The Supreme Court has held that Title II "reaches a wide array of official *conduct*." *Tennessee v. Lane*, 541 U.S. 509, 530 (2004) (emphasis added). Indeed, Title II specifically prohibits "conduct that

violates the Fourteenth Amendment" or that is otherwise part of a "pattern of [unconstitutional] exclusion." *Pickett v. Texas Tech University Health Sciences Center*, 37 F.4th 1013, 1026 (5th Cir. 2022); *accord Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011). Thus, only an "[u]njustified" action against an individual with disability "is properly regarded as discrimination based on disability." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999).

    **c.**    The Rehabilitation Act, which was on the books when Congress enacted the ACAA, likewise makes clear that discrimination requires conduct by the relevant actor. The Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from "subject[ing] to discrimination" any "qualified individual with a disability." 29 U.S.C. § 794(a). As the Supreme Court has explained, "[t]he ADA could not be clearer that the 'remedies, procedures, and rights … this subchapter provides' for violations of § 202 [of the ADA, 42 U.S.C. § 12132] are the same as the 'remedies, procedures, and rights set forth in' § 505(a)(2) of the Rehabilitation Act" (that is, 29 U.S.C. § 794a(a)(2)) for a violation of § 794. *Barnes v. Gorman*, 536 U.S. 181, 190 n.3 (2002) (quoting 42 U.S.C. § 12133). That means that the test for proving "discrimination under the [Rehabilitation Act] is operationally identical to the test under [Title II of] the ADA." *Austin v. City of Pasadena*, 74 F.4th

312, 334 (5th Cir. 2023). Thus, the Rehabilitation Act, which Congress expressly linked to the ADA, likewise requires that discrimination entail some unjustified action or wrongful conduct.

> **3.** **The Strict-Liability Provision exceeds DOT's authority under the ACAA because it purports to make air carriers liable when they have not discriminated against individuals with disabilities.**

The Strict-Liability Provision exceeds DOT's authority under the ACAA. "Agencies have only those powers given to them by Congress, and 'enabling legislation' is generally not an 'open book to which the agency [may] add pages and change the plot line.'" *West Virginia v. Environmental Protection Agency*, 597 U.S. 697, 723 (2022) (alteration in original). The ACAA gives DOT authority to stop air carriers from discriminating against passengers with disabilities. But the Strict-Liability Provision defines a "violation of the ACAA," 14 C.F.R. § 382.130(a); *see* 89 Fed. Reg. at 102,442, to include damage to wheelchairs or other assistive devices that is not caused by the wrongful conduct of an airline and thus does not constitute "discrimination" under the ACAA. The provision thus exceeds DOT's authority.

As explained (at 13-15), the Rule creates a "rebuttable presumption" that an air carrier "mishandled [a] passenger's wheelchair" or other assistive

device, "in violation of the ACAA," whenever the "passenger's checked wheelchair" or other assistive device "is not returned to the passenger in the same condition it was received" by the air carrier. 14 C.F.R. § 382.130(a). The Strict-Liability Provision makes clear that that the "presumption" of an ACAA violation "cannot be overcome" even if an air carrier demonstrates that the purported mishandling "is the result of an 'act of God' or other circumstances beyond the control of the airline." *Id.* § 382.130(a)(2).

That means that, under the Strict-Liability Provision, an airline can be liable for disability discrimination for damage to a wheelchair or other assistive device even if the airline did not discriminate. For example, an airline is liable for disability discrimination under the Rule if it exercised the utmost care in handling a wheelchair, and properly loaded and secured the chair in a plane's cargo hold, but the chair was nonetheless damaged due to extreme turbulence. An airline is also liable for disability discrimination under the Strict-Liability Provision if a third party that the air carrier does not employ or contract with—like a TSA agent—damages an assistive device in a passenger's checked luggage. Indeed, given how broadly the Rule defines an airline's "custody" and the wide range of objects that constitute an "assistive device," 14 C.F.R. § 382.3; *supra* pp. 10, 14, the Strict-Liability Provision

makes an airline liable for damage to an assistive device—which could include medication or glasses—even if a passenger checked it in his luggage and never even told the airline the device existed. Thus, the provision exposes air carriers to severe and disproportionate civil penalties—up to $225,000 per violation, *supra* p. 9—even when air carriers have not committed any discriminatory act or omission.

The Strict-Liability Provision's imposition of strict liability in those contexts exceeds DOT's authority under the ACAA to prohibit air carriers from discriminating based on passenger's disabilities. As explained, the ACAA "prohibit[s]" only "act[s] of discrimination." 49 U.S.C. § 41705(b). And discrimination, as commonly understood and in other antidiscrimination laws Congress enacted, requires some wrongful conduct. *Supra* pp. 24-33. The Strict-Liability Provision, in contrast, "demands the impossible" from air carriers, *McNeil*, 205 F.3d at 187, by making them liable for large and disproportionate civil penalties for every instance of purported discrimination, even when the air carriers have not discriminated or otherwise done anything wrong—indeed, even when the air carriers might not even know that a passenger has a disability in the first place or has an assistive device in her luggage, *see Griffin*, 661 F.3d at 224; *supra* p. 12. That "flawed and

unreasonable construction," *McNeil*, 205 F.3d at 187, of the word "discrimination" in the ACAA is not "the 'best' reading of [the] statute," *Mayfield*, 117 F.4th at 617. Thus, DOT has not "acted within its statutory authority," *Loper Bright*, 603 U.S. at 412, and the imposition of strict liability for damage to wheelchairs and other assistive devices must be "h[e]ld unlawful and set aside," 5 U.S.C. § 706(2); *see infra* pp. 51-54.

### 4. The Strict-Liability Provision is not authorized by 49 U.S.C. § 41702, the 2018 FAA Act, or the 2024 FAA Act.

The ACAA does not give DOT authority for the Strict-Liability Provision, and neither does any other statute. In the Rule, DOT also gestured toward 49 U.S.C. § 41702, the 2018 FAA Act, and the 2024 FAA Act as additional sources of statutory authority for the Rule generally, although it did not explain which specific Rule provisions it thought those statutes authorized. *See* 89 Fed. Reg. at 102,398-99. Those statutes do not authorize DOT to enact the Strict-Liability Provision.

**a.** The Strict-Liability Provision is not authorized by 49 U.S.C. § 41702, which commands that "[a]n air carrier shall provide safe and adequate interstate air transportation."

*i.*    Given the way DOT itself framed the Strict-Liability Provision, § 41702 cannot independently justify the provision. The Strict-Liability Provision expressly states that it is defining a "violation of the ACAA." 14 C.F.R. § 382.130(a). The provision thus makes clear that the agency is purporting to go no farther than the bounds of the ACAA itself. So if the ACAA does not authorize DOT to define a violation of the ACAA as broadly as the Strict-Liability Provision purports to (and it doesn't, *supra* pp. 33-36), DOT cannot rely on a different provision to expand its authority.

Perhaps unsurprisingly, then, DOT never purported to independently justify the Strict-Liability Provision under its § 41702 authority. Rather, DOT stated that "[t]o the extent that violations of the ACAA … occur in interstate air transportation, the incidents *are also* violations of 49 U.S.C. 41702." 89 Fed. Reg. at 102,398 (emphasis added). In other words, DOT did not invoke § 41702 as an *independent* source of authority for the Strict-Liability Provision. Although DOT explained that it "has long recognized" that § 41702 "may be used to ensure 'safe and adequate' service in a civil rights context," *id.*, it never argued that § 41702 is relevant to conduct that is not discriminatory and that thus falls outside the "civil rights context." And DOT cannot now avail itself of § 41702 as alternative authority for the Strict-Liability

Provision given that it didn't afford the Airlines the opportunity to comment on § 41702 as independent authorization for the provision. *See* 5 U.S.C. § 553(b)(2); *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1, 22-23 (2020). What's more, the Rule does not *explain* how § 41702 authorizes the Rule's strict-liability provision if the ACAA does not. To the extent DOT now argues that the Rule did purport to invoke § 41702 as authority for the Strict-Liability Provision, the Rule is unlawful as an exercise in unreasoned decisionmaking, as discussed below (at 46-48).

Even if § 41702 provided authority for the Strict-Liability Provision independent of the ACAA, then the provision would be overbroad even on DOT's own terms. DOT acknowledges that § 41702 applies only to "interstate air travel." 89 Fed. Reg. at 102,398. But neither the Strict-Liability Provision nor any other provision of the Rule limits its reach to interstate air travel. And, again, DOT doesn't explain how a statutory provision that doesn't reach intrastate air travel can justify an agency regulation that does.

*ii.*    Even assuming DOT had invoked § 41702 and adequately explained itself, that statute would not authorize the Strict-Liability Provision. Like the ACAA, § 41702 is a command directed at what "[a]n air carrier shall" (or shall not) do. 49 U.S.C. § 41702. And, like the ACAA, § 41702 does

not purport to impose liability for events outside an air carrier's control. The statute does not "demand[] the impossible" from air carriers and authorize DOT to hold an airline liable for anything that might go wrong during air travel, no matter the airline's lack of culpability. *See McNeil*, 205 F.3d at 187.

It would be especially incongruous to interpret § 41702 to authorize strict liability for damage to wheelchairs—even if the ACAA does not—given the ACAA's history. As noted (at 6-7), Congress enacted the ACAA because it did not view the preexisting requirement that air carriers "provide safe and adequate service" as conferring "sufficient statutory authority to support detailed, specific antidiscrimination rules." S. Rep. No. 99-400, at 2. If § 41702's command were broad enough to allow DOT to impose strict liability for damage to wheelchairs, it would render the more-specific statutory command in the ACAA superfluous.

That reading would also contravene the rule of "statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Indeed, the purpose of that rule is to "avoid[] … the superfluity of a specific provision that is swallowed by the general one." *Id.* And courts should not adopt a reading that defies "the rule that [courts] must normally seek to construe Congress's work 'so that effect

is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Ysleta del Sur Pueblo v. Texas*, 596 U.S. 685, 698-99 (2022) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Those principles operate with additional force in the administrative-law context, where "a specific policy embodied in a later federal statute" can narrow a court's "construction of [an] [earlier] statute." *Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (second alteration in original). Here, the enactment of the ACAA shows that Congress did not think that it had silently authorized DOT to impose sweeping liability for damage to wheelchairs under § 41702. Nor should a court think so, either, given that "Congress does not 'hide elephants in mouseholes.'" *Sackett v. Environmental Protection Agency*, 598 U.S. 651, 677 (2023).

**b.** The 2018 FAA Act and 2024 FAA Act also do not authorize the Strict-Liability Provision. Those statutes instructed DOT to undertake various rulemakings to implement the ACAA, but they did not expand the scope of airlines' liability.

*i.* For example, the Rule cites section 440 of the 2018 FAA Act as a source of DOT's authority. *See* 89 Fed. Reg. at 102,398. But that provision simply directed DOT to "review, and if necessary revise, applicable

regulations to ensure that passengers with disabilities who request assistance" receive "dignified, timely, and effective assistance at airports and on aircraft from trained personnel." 2018 FAA Act § 440(a)(1), 132 Stat. at 3347. The statute did not alter the substantive standard under the ACAA for when an airline is liable for violating the rights of a passenger with disabilities.

Indeed, the 2018 FAA Act makes that point clear in another provision the Rule invoked. DOT cited as authority for the Rule the 2018 FAA Act's command that DOT should "develop the Airline Passengers with Disabilities Bill of Rights." 89 Fed. Reg. at 102,398 n.10; *see* 2018 FAA Act § 434, 132 Stat. at 3343. But that provision expressly provides that the "development" of the bill of rights "shall not be construed as expanding or restricting the rights available to passengers with disabilities on the day before the date of enactment of the FAA Reauthorization Act of 2018." 49 U.S.C. § 41728(c); *see* 2018 FAA Act § 434(c), 132 Stat. at 3343. That language makes clear that the 2018 FAA Act did not modify preexisting standards for airlines' liability for disability discrimination.

*ii.*     The 2024 FAA Act likewise does not expand airlines' liability or allow DOT to impose strict liability for wheelchair damage. Indeed, the sections of the 2024 FAA Act that DOT cited as bases for its authority for the

Rule instruct DOT to "develop … minimum training standards for airline personnel or contractors," 89 Fed. Reg. at 102,398; *see* 2024 FAA Act §§ 542-543, 138 Stat. at 1201-03; and to "direct[] carriers to publish information relating to aircraft cargo hold dimensions," 89 Fed. Reg. at 102,399; *see* 2024 FAA Act § 544, 138 Stat. at 1203. Those statutory provisions do note relate to the Strict-Liability Challenge, and DOT has not explained how they could.

### 5. DOT's policy rationale does not give it authority for the Strict-Liability Provision.

As noted (at 14-15), DOT purported to justify imposing strict liability on air carriers on policy grounds, explaining that airlines are "in the best position to monitor the handling of wheelchairs and other assistive devices and to adjust practices and procedures to better protect wheelchairs and other assistive devices." 89 Fed. Reg. at 102,411. But that policy argument cannot change the meaning of "discrimination" in the ACAA. Even if imposing strict liability on air carriers were desirable from a public-policy perspective, such a policy decision would have to come from Congress, in the statute Congress enacted, and that was not the policy Congress enacted in the ACAA when it prohibited only discrimination. *Supra* pp. 24-33. Indeed, "no legislation pursues its purposes at all costs," and policy

- 42 -

justifications for unlawful agency action "cannot override a statute's operative language." *Apter v. Department of Health & Human Services*, 80 F.4th 579, 589 (5th Cir. 2023) (quoting *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (per curiam)). Thus, DOT's appeal to policy has no bearing on its lack of authority to impose strict liability under the ACAA—or under any other statutes it might attempt to rely on, *supra* pp. 36-42.

### B. The Strict-Liability Provision is arbitrary and capricious because DOT failed to rationally justify or explain the authority supporting it.

The Strict-Liability Provision is also unlawful because it is arbitrary and capricious. Federal agencies must engage in reasoned decisionmaking. They fail to do so, and their actions are thus arbitrary and capricious and must be set aside under the APA, when they do not articulate satisfactory explanations for their actions or they fail to respond to relevant and significant public comments. Just so here. DOT failed to respond to the Airlines' significant comment that the agency lacked authority under the ACAA for the Strict-Liability Provision, and DOT did not explain why it thought it had authority under that statute (or any other). Beyond that failure to explain its statutory authority, DOT's explanation for why it imposed strict liability is

illogical on its own terms, and the Strict-Liability Provision is arbitrary and capricious for that reason, too.

### 1.     Agency action is arbitrary and capricious if it is not an exercise of reasoned decisionmaking.

Federal agencies "are required to engage in 'reasoned decisionmaking.'" *Sierra Club v. United States Environmental Protection Agency*, 939 F.3d 649, 664 (5th Cir. 2019). Thus, "[n]ot only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Michigan v. Environmental Protection Agency*, 576 U.S. 743, 750 (2015). In other words, "[t]he APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Federal Communications Commission v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Under that standard, agency action is arbitrary and capricious where the agency has "entirely failed to consider an important aspect of the problem " or to "articulate a satisfactory explanation for its action." *Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Auto Insurance Co.*, 463 U.S. 29, 43 (1983); *cf. Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292-93 (2024). What's more, the agency's "reason for its decision" must be "both rational and consistent with the

authority delegated to it by Congress." *Xcel Energy Services Inc. v. Federal Energy Regulatory Commission*, 815 F.3d 947, 952 (D.C. Cir. 2016). Thus, agency action is arbitrary and capricious if an agency fails to explain its statutory authority to act.

The APA's arbitrary-and-capricious standard also requires the agency "to respond to relevant and significant public comments." *Lilliputian Systems, Inc. v. Pipeline & Hazardous Materials Safety Administration*, 741 F.3d 1309, 1312 (D.C. Cir. 2014). "An agency's failure to respond" to such comments "generally 'demonstrates that the agency's decision was not based on a consideration of the relevant factors.'" *Id.* In particular, an agency "must respond" to comments that "challenge a fundamental premise underlying the proposed agency decision" or that, "if true and adopted[,] would require a change in an agency's proposed rule." *Chamber of Commerce of the United States v. United States Securities & Exchange Commission*, 85 F.4th 760, 774 (5th Cir. 2023).

Agency action is also arbitrary and capricious when it is internally inconsistent. For example, in *Mozilla Corp. v. Federal Communications Commission*, 940 F.3d 1, 66-67 (D.C. Cir. 2019), the court held unlawful a Federal Communications Commission order that contradicted itself. The

underlying question was whether broadband would continue to be regulated as a "telecommunication[] service" under the Communications Act. *Id.* at 65-66. The FCC's order addressing that question, the court explained, "ma[de] no sense." *Id.* at 66. In parts of the order, the FCC "candidly acknowledged" that the Communications Act "no longer governs broadband." *Id.* But "in other portions," the FCC "seemed to whistle past the graveyard, implying without reasoned basis that" the Communications Act, "would continue to govern … broadband." *Id.* at 66-67. "Both cannot be true," and so that internally inconsistent order was arbitrary and capricious, no matter the correct meaning of the Communications Act. *Id.* at 67.

> **2.    DOT failed to explain how it had authority under the ACAA (or any other provision) to promulgate the Strict-Liability Provision, and its reasoning for imposing strict liability is not rational.**

The Strict-Liability Provision is not an exercise of reasoned decisionmaking. *First*, DOT failed to explain its authority under the ACAA to enact the provision or to respond to the Airlines' comment arguing that DOT lacked that authority. *Second*, DOT's reasoning for imposing strict liability is internally inconsistent.

**a.** The Strict-Liability Provision is arbitrary and capricious because DOT did not explain how the ACAA (or any other statute) gives it authority to impose strict liability on airlines for conduct that is not discriminatory.

As noted (at 11), the Airlines explained in their comments on the NPRM why DOT lacked authority under the ACAA to impose strict liability on air carriers. The Airlines noted that the ACAA "is limited" and "prohibits a specific act by the airlines—the act of discrimination." Airline Comments 41. Thus, the Airlines reasoned, DOT "is exceeding its statutory authority by proposing to impose strict liability on airlines without any connection to an act of discrimination by the airline." *Id.* Those comments "challenge[d] a fundamental premise underlying" the NPRM, *Chamber of Commerce*, 85 F.4th at 774, by asserting that DOT did not have statutory authority under the ACAA to impose strict liability. An agency "must respond" to a comment like that. *Id.*; *supra* p. 45.

But DOT failed to respond to the Airlines' comments or explain why it had authority under the ACAA (or any other statute) to impose strict liability on air carriers for nondiscriminatory acts. DOT did not even *acknowledge* the Airlines' comments about its lack of authority. It acknowledged *another* comment the Airlines made, that imposing strict liability "would violate

airlines' constitutional due process rights." 89 Fed. Reg. at 102,410; *see* Airline Comments 44. But DOT nonetheless imposed strict liability in the Rule for mishandlings that are "beyond the control of the airline." 14 C.F.R. § 382.130(a)(2); *see* 89 Fed. Reg. at 102,410-11. DOT's only explanation, which did not address statutory authority, was a conclusory statement that imposing such "responsibility on the carrier is an effective method to advance the goals of the ACAA" because "[t]he airline [is] in the best position to monitor the handling of wheelchairs." 89 Fed. Reg. at 102,411.

That policy rationale says nothing about what the term "discrimination" means in the ACAA and does not address the Airlines comment that that statute prohibits only *the airlines'* "act[s] of discrimination." Airline Comments 41. On those points, the Rule is silent. Put simply, DOT did not address the significant comments that it lacked authority for the Strict-Liability Provision. That failure "to consider an important aspect of the problem," *State Farm*, 463 U.S. at 43, makes the Rule arbitrary and capricious.

**b.**    DOT's rationale for imposing strict liability is arbitrary and capricious for another reason—and one that independently requires vacating the Strict-Liability Provision. Lack of authority aside, DOT's rationale is self-contradictory on its own terms.

As noted (at 13), DOT found "persuasive the comments from airline industry stakeholders that it would be unreasonable to impose … strict liability," and DOT "agree[d] … that airlines should be provided an opportunity to defend themselves." 89 Fed. Reg. at 102,410. Thus, the Rule creates a "rebuttable presumption" of an ACAA violation if a checked wheelchair "that was in [an airline's] custody is not returned to the passenger in the same condition it was received." 14 C.F.R. § 382.130(a). But the Rule provides that that presumption "can be overcome" if an airline "successfully demonstrate[s]" that "the damage occurred before the passenger checked the wheelchair," "the damage occurred after [the airline] returned the wheelchair," or "the passenger's claim is false or fraudulent." *Id.* § 382.130(a)(1). The presumption "cannot be overcome" if the damage "is the result of 'an act of God' or other circumstances beyond the control of the airline." *Id.* § 382.130(a)(2).

That reasoning and resulting regulatory scheme "make[] no sense." *See Mozilla*, 940 F.3d at 66. The purported carveout for strict liability codified in § 382.130(a)(1) does not actually relive airlines of strict liability. That provision simply acknowledges that an alleged ACAA violation might, as a factual matter, not fit the regulatory definition of a violation. Section

382.130(a) makes it an ACAA violation only if wheelchair damage occurs while it is in an airline's custody. The carveout in § 382.130(a)(1) says an airline can rebut the presumption of a violation if it can show the damage did not occur when the wheelchair was in its custody. But if an airline can make that showing, there was never a violation under § 382.130(a) in the first place because the damage did not, in fact, occur while the wheelchair was in the airline's custody. Similarly, exempting airlines from liability for "false or fraudulent" claims is no exception at all. Even in a strict-liability context, a claimant is never entitled to prevail if his claim is fraudulent.

In sum, DOT acknowledged that it would be "unreasonable to impose … strict liability" on airlines, 89 Fed. Reg. at 102,410, but then adopted a regulation that imposes liability for "circumstances beyond the control of the airline," 14 C.F.R. § 382.130(a)(2) — in other words, strict liability. The regulatory carve out in § 382.130(a)(1) does not relieve airlines of strict liability for damage to wheelchairs or other assistive devices. It simply provides that an alleged ACAA violation might fail as a factual matter and that airline is not liable when a passenger lies or acts fraudulently. Both of those things would be true even if § 382.130(a)(1) did not exist, so that provision is

meaningless. "[T]hat result" is not "logical and rational," *Michigan*, 576 U.S. at 750, and the Strict-Liability Provision is thus unlawful under the APA.

To be sure, DOT stated in the Rule's preamble that "[n]egligence of the person with a disability … could also be a defense to a presumption of a mishandling violation." 89 Fed. Reg. at 102,410. But DOT failed to codify that defense in § 382.130(a), and the regulation's text in fact *contradicts* that defense. The regulation says that the presumption of an ACAA violation cannot be rebutted when damage results from "circumstances beyond the control of the airline," 14 C.F.R. § 382.130(a)(2), without differentiating between circumstances (like the negligence of a person with a disability) that could be a defense to ACAA liability, and circumstances (apparently, all other circumstances beyond the control of an airline) that cannot. That contradiction also makes the Strict-Liability Provision illogical and thus arbitrary and capricious.

### C.     The proper remedy is to vacate the Strict-Liability Provision and sever it.

**1.**     The Court must vacate the Strict-Liability Provision, but it could sever that provision and leave intact the rest of the Rule. The Airlines are

firmly committed to eliminating discrimination against passengers with disabilities.

a.     "When a court holds that an agency rule violates the APA, it 'shall—not may—hold unlawful and set aside [the] agency action.'" *National Ass'n of Manufacturers v. United States Securities & Exchange Commission*, 105 F.4th 802, 815 (5th Cir. 2024). But "the APA permits a court to sever a rule by setting aside only the offending parts of the rule." *Carlson v. Postal Regulatory Commission*, 938 F.3d 337, 351 (D.C. Cir. 2019).

This Court has identified two factors to consider "when resolving severability issues in the agency rulemaking context." *National Ass'n of Manufacturers*, 105 F.4th at 816. *First*, the Court considers whether "the agency would have adopted the same disposition regarding the unchallenged portion [of the rule] if the challenged portion were subtracted." *Id.* (quoting *Nasdaq Stock Market LLC v. Securities & Exchange Commission*, 38 F.4th 1126, 1144 (D.C. Cir. 2022)). To that end, a severability clause may address "any doubt about what the [agency] would have done" if the unlawful portion of a rule "were subtracted." *Id. Second*, a court considers "whether the remaining parts" of the rule "can 'function sensibly without the stricken provision.'" *Id.*

**b.** Because the Strict-Liability Provision is unlawful and violates the APA because it imposes liability on air carriers for nondiscriminatory conduct, *supra* pp. 33-43, 46-51, the Court must vacate 14 C.F.R. § 382.130(a). Although the Airlines welcome DOT's and PVA's views on severability, the Airlines believe that severing the Rule's unlawful provision and leaving the remainder intact is an appropriate remedy here.

*First*, DOT likely would have adopted the "unchallenged portion [of the [R]ule]" even "if the challenged portion were subtracted." *National Ass'n of Manufacturers*, 105 F.4th at 816. Indeed, the Rule contains a severability clause stating that "in the event that a court were to invalidate one or more of this final rule's provisions," DOT's "intent is that the remaining provisions should remain in effect to the greatest extent possible." 89 Fed. Reg. at 102,436. DOT specifically noted that the "rule text regarding a rebuttable presumption of a violation … of the ACAA … is separate and unrelated from" other provisions in the Rule. *Id. Second*, the Rule's remaining provisions "can 'function sensibly'" without the unlawful ones. *See National Ass'n of Manufacturers*, 105 F.4th at 816.

**2.** Vacating the Strict-Liability Provision also has implications for how DOT enforces other provisions of the Rule beyond § 382.130. For

example, in elaborating on its decision to require that air carrier provide "safe and dignified" assistance as part of the Rule's "general nondiscrimination requirement," 14 C.F.R. § 382.11(b), DOT explained that "an airline is providing unsafe assistance if an airline returns a damaged wheelchair and the wheelchair malfunctions and as a result the passenger is injured," 89 Fed. Reg. at 102,407. But, as explained (at 23-36), the ACAA does not authorize DOT to impose strict liability on air carriers for damage to wheelchairs that does not result from discriminatory conduct by the airlines. Thus, if an airline unknowingly returns a wheelchair that was damaged before the passenger dropped it off or through the malfeasance of a third party, DOT cannot hold an airline liable for discrimination under the ACAA. Indeed, DOT cannot enforce any of the Rule's provisions in a manner that imposes liability for air carriers' conduct that does not meet the statutory definition of discrimination for the same reasons that DOT cannot enforce the Strict-Liability Provision itself.

# CONCLUSION

The Court should grant the petition for review, vacate the Strict Liability Provision codified in 14 C.F.R. § 382.130(a), hold it unenforceable across the Rule, and sever and leave intact the remainder of the Rule.

Dated: June 11, 2025

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Hanaa Khan
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Jeremy Patashnik
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that (1) this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(e), because it contains 11,100 words, as calculated by Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and (2) this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: June 11, 2025                    */s/ Shay Dvoretzky*
                                        Shay Dvoretzky

                                        *Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2025, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: June 11, 2025                    */s/ Shay Dvoretzky*
                                        Shay Dvoretzky

                                        *Counsel for Petitioners*

[This page intentionally left blank.]

## INDEX OF ADDENDUM

**Page**

5 U.S.C. § 706.................................................................................Add. 1

49 U.S.C. § 41702...........................................................................Add. 3

49 U.S.C. § 41705...........................................................................Add. 4

14 C.F.R. § 382.130(a) ...................................................................Add. 6

# ADDENDUM

## 5 U.S.C. § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject

to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole

record or those parts of it cited by a party, and due account shall be taken of

the rule of prejudicial error.

## 49 U.S.C. § 41702. Interstate air transportation

An air carrier shall provide safe and adequate interstate air transportation.

## 49 U.S.C. § 41705. Discrimination against handicapped individuals

(a) IN GENERAL.—In providing air transportation, an air carrier, including (subject to section 40105(b)) any foreign air carrier, may not discriminate against an otherwise qualified individual on the following grounds:

(1) the individual has a physical or mental impairment that substantially limits one or more major life activities.

(2) the individual has a record of such an impairment.

(3) the individual is regarded as having such an impairment.

(b) EACH ACT CONSTITUTES SEPARATE OFFENSE.—For purposes of section 46301, a separate violation occurs under this section for each individual act of discrimination prohibited by subsection (a).

(c) INVESTIGATION OF COMPLAINTS.—

(1) IN GENERAL.—The Secretary shall investigate each complaint of a violation of subsection (a).

(2) PUBLICATION OF DATA.—The Secretary shall publish disability-related complaint data in a manner comparable to other consumer complaint data.

(3) REVIEW AND REPORT.—The Secretary shall regularly review all complaints received by air carriers alleging discrimination on the basis

of disability and shall report annually to Congress on the results of such review.

(4) TECHNICAL ASSISTANCE.—Not later than 180 days after the date of the enactment of this subsection, the Secretary shall—

(A) implement a plan, in consultation with the Department of Justice, the United States Architectural and Transportation Barriers Compliance Board, and the National Council on Disability, to provide technical assistance to air carriers and individuals with disabilities in understanding the rights and responsibilities set forth in this section; and

(B) ensure the availability and provision of appropriate technical assistance manuals to individuals and entities with rights or responsibilities under this section.

**14 C.F.R. § 382.130. What are the handling requirements for wheelchairs, scooters, other mobility aids, and other assistive devices and what obligations apply when wheelchairs or other assistive devices are mishandled?**

(a) You must return checked wheelchairs, scooters, other mobility aids, and other assistive devices to the passenger in the condition in which you received them. Whenever a passenger's checked wheelchair, scooter, other mobility aid, or other assistive device that was in your custody is not returned to the passenger in the same condition it was received, there is a rebuttable presumption that you mishandled the passenger's wheelchair, scooter, other mobility aid, or other assistive device in violation of the ACAA.

(1) The presumption of a violation in this paragraph (a) can be overcome if you can successfully demonstrate that the alleged mishandling of the wheelchair, scooter, other mobility aid, or other assistive device did not occur while the wheelchair, scooter, other mobility aid, or assistive device was in your control and custody (*e.g.,* the damage occurred before the passenger checked the wheelchair, scooter, other mobility aid, or assistive device; the damage occurred after you returned the

wheelchair, scooter, other mobility aid, or assistive device to the passenger) or that the passenger's claim is false or fraudulent.

(2) The presumption of a violation in this paragraph (a) cannot be overcome by demonstrating that the mishandling of a checked wheelchair, scooter, other mobility aid, or other assistive device is the result of "an act of God" or other circumstances beyond the control of the airline.

…